IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Augustine Green, | Case No. 3:06 CV 2509 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Land-O-Sun Dairies, LLC, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 15). The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1441.  For the reasons stated below, Defendant's Motion is granted-in-part and denied-in-part.

## BACKGROUND

Plaintiff Augustine Green worked for Defendant Land-O-Sun Dairies, d/b/a Frostbite Brands (Frostbite) as a packer. As an employee of Defendant, Plaintiff was a member of Local 20 of the International Brotherhood of Teamsters AFL-CIO. She began as a seasonal worker in February 1998, and was employed full-time on January 18, 1999. Plaintiff's job duties consisted primarily of packing ice cream novelties into boxes and monitoring wrapping machines. Performing these duties required Plaintiff to lift boxes that weighed anywhere from fifteen to sixty pounds.

In March 2000, Plaintiff suffered a work-related injury to her left shoulder, and in July 2002 she suffered a crushing injury to a finger on her left hand.  Plaintiff began a leave of absence on October 28, 2003, during which she underwent one surgery on her shoulder and multiple surgeries

on her finger, a course of treatment which ended in amputation of the finger. Beginning October 29, 2003 through the date of this opinion, Plaintiff received, and continues to receive, Ohio Workers' Compensation temporary-total disability benefits.

On December 7, 2005, more than two years after her leave of absence began, Plaintiff informed Defendant that she was medically cleared to return to work. Her physician, Dr. Nielsen, released her with the following conditions: no lifting objects over ten pounds; no reaching higher than her shoulders; and no bending lower than her knees. Plaintiff contends that she could have performed light-duty tasks, but Defendant claims that no positions were available which met her restrictions.

In a letter sent by regular mail by Deborah Nowacki, Defendant's Human Resource Manager, Defendant denied Plaintiff's request to work on the grounds that she had lost her seniority pursuant to Section 5.3 of the Collective Bargaining Agreement (CBA) which governed her employment. This Section states (Complaint, Ex. 9):

> No member of the Union shall lose his/her seniority by reason of lay-off or temporary cessation of employment if he/she is again employed within the twelve (12) month period dating from the beginning of the month in which the lay-off or temporary cessation occurred . . . .

As Plaintiff began a leave of absence in October 2003, her seniority was lost in October 2004, one year after she began her leave of absence and more than a year before she attempted to return to work. Nowacki's letter informed Plaintiff that because she lost her seniority and the company was "not currently accepting applications for new employees," no work was available (Complaint, Ex. 1).

On December 21, 2005, Plaintiff filed a grievance with her Union in accordance with the CBA, which was denied. Plaintiff's Union representative initially informed Plaintiff that the Union intended to proceed to arbitration, but the Union subsequently decided not to arbitrate. Plaintiff

2

appealed this decision to the Executive Board of the Local 20 and was granted a hearing, but the Union again declined to proceed to arbitration.

Plaintiff filed the instant action on September 15, 2006 in the Lucas County Court of Common Pleas alleging the following claims: (1) Breach of Contract; (2) Promissory Estoppel; (3) Intentional Infliction of Emotional Distress; and (4) wrongful termination in violation of Ohio public policy (pursuant to *Coolidge v. Riverdale Local Sch. Dist.*, 100 Ohio St. 3d 141 (2003)). Defendant removed the action to this Court on October 17, 2006. This matter is now before the Court on Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## DISCUSSION

Defendant contends that all four of Plaintiff's causes of action are preempted by Section 301 of the Labor-Management Relations Act ("LMRA"). This section provides that:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties.

3

(29 U.S.C. § 185(a)). As noted by the Sixth Circuit Court of Appeals, "the Supreme Court has interpreted this language to require federal pre-emption of state-law based actions . . . [when those actions are] inextricably intertwined with consideration of the terms of the labor contract." *Mattis v. Massman*, 355 F.3d 902, 2004 U.S. App. LEXIS 68, at *5 (6th Cir. 2004) (citing *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382 (6th Cir. 1991) (citations omitted)). To survive a defense of preemption, a state-law claim must be "independent" of the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1989). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citation omitted). To determine whether the claim is independent of the CBA, the Sixth Circuit has developed a two-part inquiry:

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. [*DeCoe v. GMC*, 32 F.3d 212, 216 (6th Cir. 1994).] If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

*Mattis*, 2004 U.S. App. LEXIS 68, at *9. It is through this framework that the Court examines Plaintiff's four causes of action.

### 1. **Breach of Contract**

Plaintiff first claims that her termination constitutes a breach of contract. The only contract identified in the Complaint, however, is the CBA. A claim for breach of the CBA necessarily requires interpretation of the CBA's terms and is therefore preempted.

4

To the extent that Plaintiff's claim is treated as a hybrid Section 301 claim, it must be dismissed. A hybrid Section 301 action consists of two claims: breach of the CBA by the employer and breach of the duty of fair representation by the union. To recover against either the employer or the union a plaintiff must show both. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3rd 573 (6th Cir. 1994). Plaintiff has made no allegation that the Union breached its duty of fair representation. Accordingly, Plaintiff's breach of contract claim is dismissed.

### 2. Promissory Estoppel

Plaintiff's promissory estoppel claim is similarly preempted and must be dismissed. This claim is "quintessentially one of wrongful termination," and to resolve the claim "the district court would be required to interpret the terms of the collective bargaining agreement." *Heard v. SBC Ameritech Corp.*, Case No. 05-2165, 205 Fed. Appx. 355, 358 (Oct. 23, 2006) (holding that a claim of promissory estoppel was preempted by Section 301 of LMRA). Plaintiff's promissory estoppel claim is preempted and must also be dismissed.

### 3. Intentional Infliction of Emotional Distress

Plaintiff next alleges a claim of intentional infliction of emotional distress. To recover for intentional infliction of emotional distress in Ohio, a plaintiff must establish:

1. that the actor intended to cause emotional distress or knew or should have known that his actions would result in serious emotional distress to the plaintiff;

2. that the conduct complained of has been so outrageous in character and extreme in degree as to go beyond all bounds of decency;

3. that the conduct proximately caused the plaintiff's injury; and

4. that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Ashcroft v. Mt. Sinai Medical Ctr.*, 68 Ohio App. 3d 359, 366 (1990). *See also Yeager v. Local Union 20 of Teamsters*, 6 Ohio St. 3d 369 (1983). The second element is at issue in this case: was Defendant's conduct "outrageous?"

The determination of whether Defendant's conduct was outrageous requires an interpretation of the CBA to determine whether the agreement authorized Plaintiff's termination. The Sixth Circuit has held that for the purposes of the tort of intentional infliction of emotional distress, a defendant has not acted outrageously "where he has done no more than to insist upon his legal rights in a permissible way." *DeCoe*, 32 F.3d at 219 (quoting *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 196 (6th Cir. 1986)). "As such, in determining whether an employer pursued his legal rights under a CBA 'in a permissible way,' a court necessarily must refer to the agreement." *Went v. Lafarge Corp.*, 136 F. Supp. 2d 741, 743 (N.D. Ohio 2001) (citing *DeCoe*, 32 F.3d at 220).

In the instant action, Plaintiff contends that Defendant acted outrageously in terminating her. Defendant contends its actions were authorized by the CBA. In *Went*, another case in this District, the court was faced with a similar issue. There, the plaintiff claimed that her termination was outrageous, but the defendants claimed they were merely pursuing their legal rights under the CBA. The court held:

> If the Defendants merely pursued their right to discharge the Plaintiff under the CBA, their conduct in doing so cannot be outrageous; if their conduct went beyond mere enforcement of their rights under the CBA, then their conduct may be outrageous. In order to resolve this issue, the Court must refer to the CBA. Accordingly, the Plaintiff's claim for intentional infliction of emotional distress is completely preempted by § 301 of the LMRA.

*Went*, 136 F. Supp. 2d at 743-44. Likewise, resolution of the "outrageousness" issue in this case requires interpretation of the CBA here. Accordingly, Plaintiff's claim for intentional infliction of emotional distress is preempted by Section 301 of LMRA and therefore dismissed.

6

### 4.     **Wrongful Termination in Violation of Ohio Public Policy (*Coolidge*)**

Plaintiff's final claim is for wrongful termination in violation the Ohio public policy set forth in *Coolidge v. Riverdale Local Sch. Dist.*, 100 Ohio St. 3d 141 (2003).  In *Coolidge*, the plaintiff was a school teacher who was injured by a student and received temporary total disability (TTD) workers' compensation benefits from the state.  She was terminated after her accrued leave was depleted despite the fact that she was unable to return to work and still receiving temporary total disability benefits.  The court held that although the plaintiff's termination was not retaliatory, it violated the public policy embodied in Ohio's workers' compensation law.  *Id.* at 150.  Accordingly, the court held "that an employee who is receiving TTD compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition."  *Id.*

Defendant contends that this claim is preempted by Section 301 of LMRA because Plaintiff's discharge occurred pursuant to the CBA.  A *Coolidge* claim, however, does not require interpretation of the CBA; Plaintiff must show that she was receiving temporary total disability benefits and was discharged solely on the basis of absenteeism or inability to work.  "Plaintiff's claim neither arises under the collective bargaining agreement nor requires interpretation of that agreement."  *Clement v. Sypris Technologies*, No. 3:05-CV-7317, 2006 U.S. Dist. LEXIS 25125, at *8 (N.D. Ohio May 1, 2006) (Carr, C.J.) (holding that a *Coolidge* claim is not preempted by LMRA Section 301).  Further, Defendant cannot manufacture preemption by claiming that its actions were justified under the CBA: "it is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the collective bargaining agreement to do what it did."  *O'Shea v. Detroit News*, 887

F.2d 683, 687 (6th Cir. 1989) (citing *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1334 (6th Cir. 1989) (en banc)). Accordingly, Plaintiff's *Coolidge* claim is not preempted.

Defendant cannot prevail on the merits at this stage in the case. Defendant first contends that it is entitled to summary judgment on Plaintiff's *Coolidge* claim because Plaintiff is covered by a CBA and therefore cannot maintain an action for wrongful discharge in violation of public policy. In support, Defendant cites *Haynes v. Zoological Society of Cincinnati*, 73 Ohio St. 3d 254 (1995), which held that union employees covered by a CBA cannot bring claims for wrongful discharge in violation of public policy. This argument is belied by the fact that the plaintiff in *Coolidge* was covered by a CBA. *Coolidge*, 100 Ohio St. 3d at 141-42. Indeed, this Court has held that "the Ohio Supreme Court in *Coolidge* created an exception to the *Haynes* bar in cases involving persons, including union members, receiving temporary total disability workers compensation payments." *Clement*, 2006 U.S. Dist. LEXIS 25125, at *6-*7 (citing *Urban v. Osborn Mfg., Inc.*, 165 Ohio App. 3d 673, 677 ("The *Coolidge* court did not give a blanket extension to all employees covered by a CBA, but found that the workers' compensation system redefined the employment relationship")). Therefore, Plaintiff's claim is not barred simply because she is a union employee covered by a collective bargaining agreement.

Next, Defendant contends that Plaintiff's *Coolidge* claim fails because she was not discharged based solely on the violation of an attendance policy. Defendant argues that "Plaintiff was discharged because her seniority lapsed under Section 5.3 of the collective bargaining agreement and because of her inability to perform the essential functions of her job" (D.'s Mot. for SJ, p. 15, citing Nowacki Depo., p. 27). Plaintiff, however, has put forth evidence that she was terminated solely because of

8

absenteeism or inability to work; namely, the letter from Nowacki (Complaint, Ex. 1), which states (in total):

> On Wednesday, December 7, 2005 you notified us of your desire to return to work.
>
> As you know, you have been off work since October 28, 2003. According to our Collective Bargaining Agreement, Section 5.3, if an employee is not again employed within the twelve month period dating from the beginning of the month in which the absence occurred, the absence results in a loss of seniority. Your seniority was lost effective October 1, 2004.
>
> We are not currently accepting applications for new employees and, therefore, cannot offer you work.

This letter makes no mention of Plaintiff's restrictions or her ability to perform job functions; it clearly states that she lost her seniority because she was absent for more than twelve months. This loss of seniority constitutes a termination because, as the letter makes clear, it relegated Plaintiff to the "position" of new job applicant.

Viewing the facts in the light most favorable to Plaintiff, the non-moving party, a reasonable jury could certainly find that Plaintiff lost her seniority, and thus was discharged, solely on the basis of her absenteeism. Accordingly, a genuine issue of material fact exists as to the cause of Plaintiff's discharge, and Defendant's Motion for Summary judgment is denied as to Plaintiff's *Coolidge* claim.

This case is set for a Status Telephone Pretrial on **Friday, June 1, 2007 at 9:00 a.m.** The Court will initiate the call.

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

                                                  May 24, 2007